RECEIVED

JUL 1 1 2011

TONY R. MOORE, CLERK
BY _____
       DEPUTY

# UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

CARMENCITA PATTON

versus

BROOKSHIRE GROCERY COMPANY

CIVIL ACTION NO. 10-0350
JUDGE TOM STAGG

## MEMORANDUM RULING

Before the court is a motion for summary judgment filed by the defendant, Brookshire Grocery Company ("Brookshire").  See Record Document 13.  For the reasons set forth below, Brookshire's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

Carmencita Patton ("Patton"), a black female, began working for Brookshire on November 5, 2007, at store number 18 in Shreveport, Louisiana.  She was hired as a cashier and worked in this position until she resigned on February 11, 2010.  During her tenure at Brookshire, Patton asserts that she applied for several promotions and was denied each time due to her race.  Patton also alleges that she was subjected to harassment and a hostile work environment, claiming that she was harassed by

white male assistant managers because of her race.[1]

Patton had been working at Brookshire approximately nine months when she expressed an interest in becoming a service trainer. A service trainer is responsible for promoting customer service by training cashiers and courtesy clerks on front end procedures and for monitoring and counseling partners on manners and grooming standards. Patton learned that Toni Tobin ("Tobin"), a service trainer, was going to be transferred to another store. Tobin suggested that Patton apply to be a service trainer. In response to this suggestion, Patton approached Wendy McLean ("McLean"), the assistant manager, who provided Patton with an application. Patton completed the application, McLean signed it, and it was Patton's understanding that it would be faxed to Alecia Hill ("Hill"), the district coordinator over human resources for Brookshire.[2] At the time Patton filled out the application for service trainer, there

---

[1]Additionally, Patton contends that she suffered from disparate treatment while she was an employee at Brookshire. Patton's opposition to the motion for summary judgment does not address these claims. Brookshire has met its summary judgment burden as to any claims by Patton for disparate treatment and Patton has failed to produce any evidence to counter Brookshire's arguments. Based on the arguments and evidence before the court, the court finds that Brookshire is entitled to summary judgment as to any claims for disparate treatment.

[2]Brookshire has a procedure whereby internal job applications are filled out and signed by a member of management. Thereafter, the employee must ensure that the application is either faxed to human resources staffing in Tyler, Texas (the home office), or transmitted by internal company mail to the home office.

was no posting or vacancy for the position. McLean testified that she told Patton to submit the application if the job was posted. See Record Document 13, Ex. 5. The position was ultimately filled by a white female without a vacancy being posted by Brookshire.

Patton next asserts that she was passed over for a position in the health and beauty aids/pharmacy and that a white male was ultimately chosen for the job. However, there was never a posted opportunity in that area of the store and Patton never formally applied for any position in that area of the store.

Patton also contends that she applied for the position of assistant deli manager at another Brookshire store in Shreveport. Patton completed an internal application for the position and gave it to her store director to fax to human resources staffing. Her application, however, was not timely received by the store with the job opening and thus, it was not considered.

On September 8, 2009, Patton filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that from August 1, 2008, until July 31, 2009, she was subjected to "continued harassment" by management and was denied available assignments and promotions. Patton asserted

3

claims under both federal law and state law.[3]   She contended that she was

discriminated against because of her race and that Brookshire retaliated against her

for opposing discriminatory practices.  Patton then timely filed this action against

Brookshire.  Thereafter, Brookshire filed the instant motion for summary judgment,

Patton filed an opposition, and Brookshire filed a reply.[4]  See Record Documents 13,

24 and 28.

## II. ANALYSIS

**A.    Summary Judgment Standard.**

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil

Procedure when "there is no genuine dispute as to any material fact and the movant is

---

[3]Louisiana's anti-discrimination statute is "substantively similar" to Title VII, and Louisiana courts routinely look to the federal jurisprudence for guidance. See McCoy v. City of Shreveport, 492 F.3d 551, 556 n. 4 (5th Cir. 2007).  The outcome of Patton's discrimination and retaliation claims will be the same under the federal and state statutes.  Therefore, the issues will be analyzed only under the applicable federal precedents.

[4]Additionally, Brookshire has filed a "Response In Opposition To Plaintiff's Summary Judgment Evidence And Exhibits" (Record Document 27), complaining about some of the statements contained within the opposition and the exhibits thereto.  This court is aware of Federal Rule of Civil Procedure 56's admonition that only admissible evidence may be considered in ruling on a summary judgment motion.  See Stults v. Conoco, Inc., 76 F.3d 651, 654-55 (5th Cir. 1996).  The court--fully cognizant of the evidentiary standards--will consider the evidence, giving the statements due weight and appropriately discounting any improper statements and evidence.

entitled to judgment as a matter of law."[5] <u>Quality Infusion Care, Inc. v. Health Care Serv. Corp.</u>, 628 F.3d 725, 728 (5th Cir. 2010). "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Patrick v. Ridge</u>, 394 F.3d 311, 315 (5th Cir. 2004). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." <u>Gen. Universal Sys., Inc. v. Lee</u>, 379 F.3d 131, 141 (5th Cir. 2004). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. <u>See</u> <u>Boudreaux v. Swift Transp. Co.</u>, 402 F.3d 536, 540 (5th Cir. 2005). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. <u>Ramsey v. Henderson</u>, 286 F.3d 264, 269 (5th Cir. 2002).

**B.      Failure To Promote.**

Patton alleges that Brookshire discriminated against her because of her race by

---

[5] The court notes that the newly amended Rule 56 requires that there be "no genuine **dispute** as to any material fact," but this change does not alter the court's analysis. Fed. R. Civ. P. 56(a) and advisory committee's note (emphasis added).

failing to promote her on three separate occasions. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., provides that "[i]t shall be an unlawful employment practice for an employer--(1) to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "An employee can prove discrimination through direct or circumstantial evidence." Jones v. Robinson Prop. Group, L.P., 427 F.3d 987, 992 (5th Cir. 2005). It is clear that Patton is relying on circumstantial evidence to support her present claims.[6]

"Cases of discrimination based on circumstantial evidence are subject to the McDonnell Douglas burden-shifting analysis." See Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 316-17 (5th Cir. 2004) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973)).

> To survive summary judgment under McDonnell Douglas, the plaintiff must first present evidence of a prima facie case of discrimination. If the plaintiff presents a prima facie case, discrimination is presumed, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason

---

[6]Patton does not allege that she possesses direct evidence of discrimination in support of her failure to promote claims. See Record Document 24 at 2; see also Jones, 427 F.3d at 993 (providing descriptions and examples of direct evidence of discrimination that do not match the evidence presently before this court in regard to Patton's failure to promote claims).

> for the underlying employment action.[7]  If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination.[8]

Davis, 383 F.3d at 317 (citations omitted).

As noted above, the court must first consider whether the plaintiff has established a prima facie case of discrimination.  See id.  Under this test, the plaintiff/employee must demonstrate:

> (1) that the employee is a member of [a] protected class; (2) that [s]he sought and was qualified for the position; (3) that [s]he was rejected for the position; and (4) that the employer continued to seek or promoted applicants with the plaintiff's qualifications.

Davis, 383 F.3d at 317 (citations omitted).  Brookshire contends that Patton cannot establish a prima facie case in that she cannot prove that she applied for and was qualified for the positions about which she complains or that race was a factor in any of the employment decisions.  See Record Document 13 at 10-11.

---

[7]"This burden on the employer is only one of production, not persuasion, involving no credibility assessments."  Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).

[8]"[A] plaintiff must present sufficient evidence to find that the employer's asserted justification is false."  Crawford v. Formosa Plastics Corp., 234 F.3d 899, 903 (5th Cir. 2000) (citations and quotations omitted).

7

1.    **Service Trainer Position.**

As previously mentioned, Patton obtained and completed an application to be a service trainer and submitted it to her supervisor, McLean, in August of 2008. Patton believed that the application would be faxed to human resources. See Record Document 13, Ex. 1 at 57.    McLean testified that she told Patton to submit her application if the job was posted. See id., Ex. 5.

There was no job posting for the service trainer position from August of 2008 through January of 2009. See id., Ex. 3 at 3.    No one filled the position of service trainer until Sandra Corbin ("Corbin"), a white female, was named to the position in January of 2009. See id., Ex. 2 at 2. The decision to place Corbin in the position was made by the store director, Don Webster ("Webster"), in consultation with the human resources coordinator. See id., Ex. 4 at 19-21. The job description for service trainer required someone who could work average weekly hours of 32 to 40 hours with variable shifts, including nights, weekends and holidays. See id., Ex. 3.    When the position of service trainer was filled, Patton was a part-time employee who had indicated to management that she was only available to work mornings and certain days of the week.    Webster and other management personnel at Brookshire were under the impression that Patton was not available to work flexible hours. See id., Ex. 4 at 21-22. However, Patton points out that on her application for service trainer, she

8

indicated that she would be willing to work 40 hours per week and weekends.  See

Record Document 24, Ex. 2.

The evidence submitted with Brookshire's motion for summary judgment

illustrates that genuine disputes of material fact remain as to whether Patton has

established a prima facie case with regard to Brookshire's failure to promote her to

the service trainer position.  For example, while Brookshire repeatedly asserts that

there was no job posting for the service trainer position, Webster testified that he

chose Corbin for the position after she applied for the position.  See Record Document

13, Ex. 3 at 27 and 29-30.  In addition, as mentioned, there is conflicting evidence

regarding the hours that Patton was available to work.[9]

---

[9]Notably, Brookshire did not contend in its motion for summary judgment
that it had legitimate, nondiscriminatory reasons for failing to promote Patton to
the service trainer position.  Although a lengthy recitation of the legal standards
regarding a failure to promote claim is contained within Brookshire's motion,
including a  description of the legal requirements of legitimate, nondiscriminatory
reasons for making employment decisions, there is no meaningful application of
the law to the facts of the case beyond a brief argument that Patton cannot prove
her prima facie case.  Although the court could *infer* such reasons from the
summary judgment evidence, none were explicitly provided by Brookshire in its
summary judgment motion and the court is unwilling to conjure legitimate,
nondiscriminatory reasons for Brookshire's actions.  District courts have a "limited
and neutral role in the adversarial process" and should not become advocates who
comb through the record and make a party's case.  Adler v. Wal-Mart Stores, Inc.,
144 F.3d 664, 672 (10th Cir. 1998).  Though it should be obvious and has been
stated by courts before, "judges are not like pigs, hunting for truffles buried in
briefs."  De La O v. Housing Auth. of City of El Paso, Tex., 417 F.3d 495, 501 (5th
Cir. 2005) (citations and quotations omitted).
    Numerous times in the review of the documents presented to the court by
Brookshire, the court found itself "hunting for truffles."  For example, Brookshire

Taken as a whole, and viewing all facts and inferences in a light most favorable to Patton, the court finds that genuine disputes of material fact remain as to whether Patton has established a prima facie case of a failure to promote with regard to the position of service trainer. Brookshire has failed to meet its burden and is not entitled to a judgment as a matter of law. Accordingly, Brookshire's motion for summary judgment will be denied as to this failure to promote claim.

2.    **Health And Beauty Aids/Pharmacy.**

Patton asserts that she was discriminated against when she was not promoted to the health and beauty aids/pharmacy area and that a white male was ultimately chosen for the job. Patton was occasionally assigned to the pharmacy area to assist with stocking or cashier duties. However, Patton never formally applied for any position in that area of the store and there was never a posted opportunity or vacancy

---

submitted only portions of the plaintiff's deposition (presumably the portions Brookshire believed relevant), in lieu of submitting the deposition in its entirety. (Interestingly, the deposition of store director Webster *was* submitted in its entirety). However, the court is perplexed as to what counsel for Brookshire found relevant in certain pages that were submitted and notes that pages that were not submitted would likely have been more helpful to the court. Particularly, the court is concerned with counsel's submission of pages eleven through thirteen of Patton's deposition. It appears that counsel for Brookshire was attempting to submit entirely irrelevant information through the submission of these pages and trying to illustrate Patton's prior history of filing lawsuits against her former employers, as if to persuade the court that this lawsuit should not be considered on its merits. The court cautions counsel that submitting irrelevant information such as this should not occur again in any of her filings with this court.

10

in that area of the store. See Record Document 13, Ex. 3 at 3. Patton did indicate to her store director that she was interested in advancing to any positions available in the store, and the store director testified that he was well aware of Patton's interest in other positions in the store. See id., Ex. 4 at 17. Patton contends that a white male was placed in the position and that management went directly to the white male to ask him whether he wanted the position instead of posting a job vacancy. However, the summary judgment evidence submitted by both parties is conflicting as to who ultimately worked in this position or whether a position was ever truly vacant. Regardless, the undisputed summary judgment evidence clearly indicates that Patton did not apply for a position in the health and beauty aids/pharmacy area. Therefore, Patton cannot establish a prima facie case of discrimination as to this position, because she did not apply for a position in the health and beauty aids/pharmacy area. See Davis, 383 F.3d at 317 (citations omitted). Accordingly, Brookshire's motion for summary judgment will be granted as to this failure to promote claim.

**3.    Assistant Deli Manager.**

Patton also contends that she applied for the position of assistant deli manager at another Brookshire store in Shreveport, but her application was not timely received. Patton completed an internal application for the position and gave it to her store director to fax to human resources staffing. Her application, however, was not timely

11

received by the store with the job opening and thus, it was not considered.  Notably, there is no explanation whatsoever by Brookshire in its brief or summary judgment evidence as to what occurred regarding Patton's application for the assistant deli manager position.

Brookshire does attempt to place the blame for Patton's application not being timely received on Patton.  However, the summary judgment evidence indicates that Patton timely completed her application and gave it to her store director to fax to the home office.  Patton stated in her deposition that after she gave her application to her store director, he then gave it to an assistant manager to fax to the home office.  See Record Document 13, Ex. 1 at 85.  For Brookshire to then place the blame on Patton for failing to ensure that the application was received is not persuasive.  An employee who presents her application to her store director or manager has, in this court's opinion, complied with the Brookshire directive that an employee must ensure that the application is either faxed to human resources in Tyler, Texas, or transmitted by internal company mail to the home office.[10]  See Record Document 13, Ex. 3 at 3A.

---

[10]The court is unwilling to conclude that Brookshire believes that each of its employees has personal access to a fax machine.  Presumably, an employee of Brookshire would also not have immediate access to internal company mail.  Thus, providing a copy of a job application to management and being told by management that the application will be faxed is sufficient to comply with the obligation to ensure that the application is either faxed to human resources or transmitted by internal company mail.

Taken as a whole, and viewing all facts and inferences in a light most favorable to Patton, the court finds that genuine disputes of material fact remain as to whether Patton has established a prima facie case of a failure to promote claim with regard to the position of assistant deli manager.   Accordingly, Brookshire's motion for summary judgment will also be denied as to this failure to promote claim.

## C.   Hostile Work Environment.

In order to establish a hostile work environment claim, Patton must prove that:

> (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.[11]

Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002) (quotations and citations omitted).  It is undisputed that Patton is a member of a protected class.  Therefore, the court turns to the second element of a hostile work environment claim:  that she was subjected to unwelcome harassment.  Patton "adamantly asserts that she was subjected to unwelcomed [sic] harassment by Jason Carson, Billy Lockard and Jay Nelms." Record Document 24 at 8.

---

[11]However, in cases where the alleged harassment has been committed by a supervisor with "immediate (or successively higher) authority over the harassment victim," Patton need not establish the fifth element.  Celestine v. Petroleos de Venezuela SA, 266 F.3d 343, 353-54 (5th Cir. 2001).

Patton contends that on numerous occasions Carson and Nelms would refuse her "restroom breaks and lunch breaks, even when there was a slow-down in work." Id. She contends that she developed several bladder infections because of having to work long hours without restroom breaks. She also asserts that the break schedule was handled in a way in which she would not timely receive her breaks like other employees. She contends that two white assistant mangers would mark the "floor chart" as if she had taken a break when she had not taken a break.[12] Patton further complains that when she was allowed to go to the restroom, the managers would call for her over the store intercom to her embarrassment. She alleges that she was teased about winning numerous awards for her work as a cashier. She also maintains that a white assistant manager would not allow the television at the store to show the inauguration of President Obama. Finally, she asserts that she was asked to "multi-task" and not given "multi-tasking pay." She concludes that all of these actions occurred because of her race.

Assuming arguendo that this conduct constitutes "unwelcome harassment," Patton has failed to prove the third element of a hostile work environment claim--that the harassment of which she complains was based on race. Patton has provided

---

[12]However, Patton admits that she never actually saw either of the assistant managers alter the floor chart.

14

numerous examples of what she contends are acts of discriminatory conduct but she does not explain how the conduct was motivated by her race. There is no summary judgment evidence that allows the court to make the inference that she suffered any of the alleged harassment because of her race. In her opposition to the motion for summary judgment, Patton states that "[i]t was obvious to other employees that [she] was being treated much differently than other employees of the Line Avenue store." Record Document 24 at 8. Notably, Patton does not argue that she was treated differently because of her race or that she was treated differently than white employees. In addition, Patton's deposition testimony demonstrates that while she believed and stated that she was treated differently from other employees, she did not assert that black employees were treated differently from white employees. Drawing all reasonable inferences in favor of Patton, her testimony does not demonstrate that she was harassed because of her race. Even assuming Patton was treated differently from all other Brookshire employees, that does not indicate that she was treated differently because of her race. These incidents might cause offense or indicate strife between Patton and her supervisors, but they are not evidence of race-based harassment. Though Patton may believe that the incidents were motivated by racial animus, subjective belief of racial motivation, without more, is not sufficient to show a hostile work environment claim. See Cavalier v. Clearlake Rehab. Hosp., Inc., 306

F. App'x 104, 107 (5th Cir. 2009).

Even if the allegedly discriminatory acts were based upon race, they would not rise to the level necessary to support a claim of hostile work environment. The fourth element of a hostile work environment claim is that the harassment complained of affected a term, condition or privilege of her employment. The Fifth Circuit explains that

> [f]or harassment on the basis of race to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."
>
> In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Ramsey, 286 F.3d at 268 (citation omitted). This court must look at the totality of the circumstances when determining whether an environment is hostile or abusive. See Shepherd v. Comptroller of Pub. Accounts of Tex., 168 F.3d 871, 874 (5th Cir. 1999).

Patton complains of workplace teasing, ridicule and criticism. The events about which she complains do not rise to the level of severity of harassment necessary to establish a hostile work environment. See Turner v. Baylor Richardson Med. Ctr.,

16

476 F.3d 337, 348 (5th Cir. 2007) ("Simple teasing, offhand comments, and isolated incidents, (unless extremely serious) will not amount to discriminatory charges that can survive summary judgment."). "Title VII . . . is not a 'general civility code.'" Lauderdale v. Tex. Dep't of Criminal Justice, 512 F.3d 157, 163 (5th Cir. 2007) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283-84 (1998)).

The alleged hostile environment was not so severe or pervasive that it affected a term or condition of her employment. Courts have repeatedly deemed much more offensive conduct and comments to be inadequate. See Pickens v. Shell Tech. Ventures Inc., 118 F. App'x 842 (5th Cir. 2004) (holding that a company Christmas party featuring a "traditional Dutch skit" in which children appeared in "black face" and during which other employees in the audience made racially derogatory comments to African-American employees was not severe or pervasive); Septimus v. Univ. of Houston, 399 F.3d 601, 611 (5th Cir. 2005); Shepherd, 168 F.3d at 874; Waltman v. Int'l Paper Co., 875 F.2d 468 (5th Cir. 1989). The conduct complained of by Patton simply does not rise to the level necessary to create a hostile work environment. See Indest v. Freeman Decorating, Inc., 164 F.3d 258, 264 (5th Cir. 1999) (stating that "[d]iscourtesy or rudeness, offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in terms and conditions of employment") (internal quotations omitted).

Again, drawing all reasonable inferences in Patton's favor, the totality of the circumstances presented does not evidence a level of harassment on the basis of race that affected a term, condition, or privilege of employment. The incidents complained of by Patton occurred over several years, were not severe and were not physically threatening or humiliating. There is no evidence that the harassment interfered with Patton's work performance. In fact, Patton received commendations at work for her performance. While this court does not doubt that Patton found the conduct subjectively offensive, the conduct does not rise to the level necessary to establish a hostile work environment.

Considering the arguments and evidence before the court, the court finds that Patton has failed to satisfy more than one element of the hostile work environment test. Patton has wholly failed to demonstrate that Brookshire's actions were racially motivated or that the harassment complained of affected a term, condition, or privilege of employment. Therefore, summary judgment is appropriate with regard to Patton's hostile work environment claims.[13]

---

[13]Patton does assert other *unsupported* allegations in her memorandum in opposition to Brookshire's motion for summary judgment. However,"[u]nsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence." Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991). It is insufficient for Patton to rest "merely upon conclusory allegations, improbable inferences, and unsupported speculation" in responding to the instant motion for summary judgment. Michaels v. Avitech, Inc., 202 F.3d 746, 755 (5th Cir. 2000) (quoting Krim v. BancTexas Grp., Inc., 989 F.2d 1435, 1449 (5th Cir. 1993) (internal quotations omitted)).

18

**D.    Retaliation.**

Patton appears to assert that the harassment and hostile environment discussed above arose after she filed her EEOC charge on September 8, 2009.  Thus, she contends that Brookshire retaliated against her.  To present a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action.  See McCoy v. City of Shreveport, 492 F.3d 551, 557 (5th Cir. 2007).  The Supreme Court has clarified that a retaliation claim may rest on an action that "a reasonable employee would have found . . . [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006) (internal quotations omitted).  In White, the Supreme Court noted that the materiality requirement reflects the importance of separating "significant from trivial harms." Id.  With this standard in mind, the court finds that all of Patton's complaints of retaliatory behavior do not rise to an actionable level.

To establish that she suffered an adverse employment action, Patton evidently relies upon the same conduct described above with regard to her hostile work environment claim.  She contends that managers changed their attitude toward her

19

after she made her complaint and subjected her to negative treatment. She also argues that her superiors made her do harder work, left her off of the work schedule, and failed to promote her to available positions.

Patton voluntarily resigned from her position at Brookshire. She also requested that her days and hours of work be limited, which Brookshire accommodated. As a matter of law, the complaints that Patton makes regarding being treated poorly or rudely do not rise to the level of material adversity. These complaints fall into the category of "petty slights, minor annoyances, and simple lack of good manners" that employees regularly encounter in the workplace and which the Supreme Court recognized are not actionable retaliatory actions. Aryain v. Wal-Mart Stores Tex., 534 F.3d 473, 485 (5th Cir. 2008) (citing White, 548 U. S. at 68, 126 S. Ct. at 2415). In addition, Patton's undesirable break schedule fails to rise to the level of material adversity. See Aryain, 534 F.3d at 486. "An employee in [Patton's] position reasonably can expect to have some break requests denied by a supervisor - in the context of an entry-level [] job, these denials amount to nothing more than the 'petty slights' or 'minor annoyances' that all employees face from time to time." Id. (citing White, 548 U.S. at 68, 126 S. Ct. at 2415).

Assuming arguendo that Patton had shown an adverse employment action, she has not cited any evidence which satisfies the third element of this test, the causal link requirement. Patton provided the court with no competent summary judgment

20

evidence to indicate that her complaints of race discrimination were the cause of any alleged adverse action or hostile environment.  In addition, she provides no evidence to establish that the alleged harassment was caused by the filing of the EEOC charge. Patton does not allege that any individual implied that the failure to promote her or any of the complained of activity was in any way connected with activity protected under Title VII.  Moreover, Patton has not specifically argued in her opposition or submitted evidence that demonstrates that the failure to promote her or any of the acts of which she complains were acts of retaliation.  Even if Patton did make these allegations, considering the evidence presently before the court, this claim could not prevail.

In sum, Patton has failed to show that she was subjected to an adverse employment action and she has failed to produce any evidence of a causal connection between any of the complained of activity or decisions not to promote her and any activity protected by Title VII.  Accordingly, summary judgment is appropriate as to Patton's retaliation claims.

### III. CONCLUSION

Brookshire's motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**.  Brookshire's motion is **GRANTED** to the extent it seeks dismissal of Patton's failure to promote claim with regard to the position in the pharmacy/health and beauty aids department.  Brookshire's motion is further

**GRANTED** to the extent it seeks dismissal of Patton's hostile work environment claim, retaliation claim and disparate treatment claim.  Brookshire's motion is further **GRANTED** to the extent it seeks dismissal of any discrimination or retaliation claims under Louisiana law.

Brookshire's motion is **DENIED** to the extent it seeks dismissal of Patton's failure to promote claims with regard to the positions of service trainer and assistant deli manager, as genuine disputes of material fact remain as to these claims.

An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DATED AND SIGNED** at Shreveport, Louisiana, this 11th day of July, 2011.

JUDGE TOM STAGG

22